UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KAREN ANN CARTER,

    Plaintiff,

vs.                                                          Case No. 3:11-cv-753-J-MCR

MICHAEL ASTRUE, Commissioner of the
Social Security Administration,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, briefs, and applicable law. For the reasons set forth herein, the Commissioner's decision is **REVERSED** and **REMANDED** for proceedings not inconsistent with this opinion.

**I.    PROCEDURAL HISTORY**

Plaintiff filed applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") on October 27, 2005. (Tr. 16). Plaintiff's applications were denied initially and upon reconsideration. (Tr. 25-30, 64-65, 68-69). Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ"), which was held on October 2, 2008. (Tr. 571-605). On December 2, 2008, the ALJ found Plaintiff not disabled. (Tr. 13-24). The Appeals Council denied Plaintiff's request for review of the ALJ's decision on June 8, 2011. (Tr. 8-11).

Accordingly, the ALJ's December 2, 2008 decision is the final decision of the Commissioner. The Plaintiff timely filed her Complaint in the United States District Court on July 28, 2011. (Doc. 1).

## II. NATURE OF DISABILITY CLAIM

### A. **Basis of Claimed Disability**

Plaintiff claims to be disabled due to bipolar disorder, fibromyalgia, and arthritis. (Tr. 79).

### B. **Summary of Evidence Before the ALJ**

Plaintiff was thirty-seven years old on the date of the administrative hearing and thirty-eight years old on the date the ALJ rendered his opinion. (Tr. 24, 79). Plaintiff did not finish high school, but acquired a GED. (Tr. 92). Plaintiff alleged disability due to bipolar disorder, fibromyalgia, and arthritis. (Tr. 79). On September 23, 2001, Plaintiff was seriously injured when she was involved in a motor vehicle accident. (Tr. 197). At Shands, the x-rays revealed a left distal radius fracture, left sacral fracture, and femoral neck fracture. (Tr. 197). As a result, Daniel N. Segina, M.D. recommended the following procedures: (1) open reduction and internal fixation of the left femoral neck fracture pending results of CT scan, (2) closed reduction of the left distal radius fracture with sugar-tong placement of left upper extremity, (3) non-weight bearing of left lower extremity, and (4) supportive care. (Tr. 197). However, Plaintiff did not receive the surgery she needed because she did not have the proper medical insurance. (Tr. 581).

On February 27, 2002, records from Branford Family Medicine revealed Plaintiff was prescribed hydrocodone for her pain. (Tr. 234). Plaintiff attempted to return to

work as a waitress on two separate occasions. (Tr. 576). Plaintiff discontinued work after a short while because she was in too much pain and could not perform the job properly. (Tr. 577). On September 4, 2002, Plaintiff was treated for chronic back and hip pain, as well as anxiety and insomnia. (Tr. 258). Plaintiff was diagnosed with lower extremity pain with radiculopathy, low back pain, anxiety, and insomnia. (Tr. 258). Plaintiff was treated several times during follow up exams and was prescribed pain medications for the same and similar complaints. (Tr. 250-58). During the exams, Plaintiff was given refills for pain medication.

On October 9, 2003, Plaintiff was treated by Dr. Gonzalez for severe pain and numbness in the right upper and left lower extremities. Dr. Gonzalez's diagnosis included: sciatica, right upper extremity paresthesias, and lower back and hip pain. (Tr. 267). After this diagnosis, Plaintiff was prescribed lortab, paxil, and ativan to control the pain. (Tr. 266). On July 9, 2004, Plaintiff was admitted to Lake City Medical Center. Plaintiff's chief complaint was severe back and leg pain. (Tr. 457). The physical examination revealed tenderness in the middle and lower back area. (Tr. 461). A subsequent diagnosis revealed the following: acute myofascial strain, severe lower back pain, depression, and fibromyalgia. (Tr. 461).

On September 13, 2004, Plaintiff was examined at Quality First Care. (Tr. 278). During the examination, Plaintiff alleged that since the motor vehicle accident, her pain had gotten progressively worse. (Tr. 278). Subsequently, Plaintiff was diagnosed with chronic pain, anxiety, and depression. (Tr. 278). Plaintiff was prescribed flexeril to help deal with the pain.

On October 2, 2004, Plaintiff was treated at Shands Lakeshore for emergency care. (Tr. 308). Plaintiff's chief complaint was severe lower back pain. (Tr. 308). Plaintiff was given another prescription for lortab. (Tr. 309). On February 22, 2005, Plaintiff returned to Shands Lakeshore due to severe back pain. (Tr. 303). Plaintiff's reported pain level was 7 - 8.5 out of 10. (Tr. 303). Plaintiff returned in April of 2005 and June of 2005 with subsequent complaints of back pain. (Tr. 289, 293). Upon discharge, Plaintiff was diagnosed with fibromyalgia and prescribed flexeril. (Tr. 297).

On November 18, 2005, Plaintiff began treatment at Meridian Behavioral Healthcare. Plaintiff reported a history of severe depression, post-traumatic stress disorder, anxiety attacks, and borderline personality disorder. (Tr. 415). On October 30, 2006, this treatment ended with a diagnosis of post-traumatic stress disorder, bipolar disorder, fibromyalgia, and carpal tunnel. (Tr. 389). Before that, Plaintiff had a physical examination performed by Timothy J. McCormick on January 26, 2006. (Tr. 315). Dr. McCormick summarized Plaintiff's examination, noting no discrete findings other than epicondyle tenderness and low back tenderness. (Tr. 318). On May 13, 2006, Plaintiff underwent a physical performed by Raymond P. Shoenrock. Plaintiff alleged chronic pain related to medical conditions. (Tr. 323, 325). At this time, Plaintiff had gained fifty pounds since she began taking methadone for pain. (Tr. 325). Dr. Shoenrock diagnosed Plaintiff with the following: major depressive disorder, recurrent, mild; polysubstance dependence, in sustained full remission; and borderline personality disorder. With regard to her work related activities, Dr. Shoenrock expressed the following:

> Regarding her ability to perform various work related mental
> activities, she impresses as having an adequate capacity in
> the areas of understanding and memory. She does impress
> as being compromised in her capacities for sustained
> concentration and persistence, social interaction, and
> adaption, due to a combination of her problems with chronic
> pain and mood symptoms.

(Tr. 326). From November 2006 to March 2007, Dr. Mitch P. Fearing confirmed previous diagnoses of lumbar radiculopathy. (Tr. 531-39). Dr. Fearing refilled Plaintiff's current pain medications. (Tr. 533).

Dr. Raul Zelaya performed an orthopedic examination on February 19, 2008. During the evaluation, Plaintiff reported progressive pain stemming from the time the motor vehicle accident occurred. (Tr. 469). Dr. Zelaya's evaluation revealed pain and swelling of the wrists and tenderness affecting the vicinity of both elbows. (Tr. 471). In addition, Dr. Zelaya noted Plaintiff had difficulty stooping, squatting, and arising from a seated position. (Tr. 471). Ultimately, Dr. Zelaya diagnosed Plaintiff with fibromyalgia and clinical depression. (Tr. 472).

On June 23, 2008, Plaintiff underwent a psychological examination by C. Russell Clifton, Jr. During the examination, Plaintiff demonstrated a sad and depressed mood, making variable eye contact. (Tr. 483). Dr. Clifton opined Plaintiff was functioning in the low average to average range of verbal intelligence and was capable of comprehending and remembering moderately detailed but not complex instructions. (Tr. 485). Dr. Clifton's diagnosis contained the following: pain disorder, dysthymic disorder, major depressive disorder (without psychotic features), personality disorder with borderline and narcissistic features. (Tr. 485). Lastly, Plaintiff underwent an MRI

of the pelvis on December 17, 2009.  (Tr. 553).  The MRI revealed moderate degenerative changes in the L5-S1 facet joints.  (Tr. 553).

## C. **Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  29 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ followed the required five-step analysis in evaluating Plaintiff's claim of disability. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 30, 2003, the alleged onset date. (Tr. 79). At step two, the ALJ determined the following impairments were severe: spinal disorders; arthralgias; history of pelvic, sacral, and left wrist fractures, healed; irritable bowel syndrome with history of bowel obstruction, repaired; history of carpal tunnel release; and multiple tender points consistent with fibromyalgia. (Tr. 18). However, the ALJ determined the following mental impairments were not severe: major depressive disorder, dysthymic disorder, pain disorder associatied with both psychological factors and general medical condition, mixed personality disorder with borderline and narcissistic feature, and poly substance abuse in long term remission. (Tr. 19). Specifically, the ALJ found Plaintiff's mental impairments did not cause more than minimal limitation in her ability to perform basic mental work activities and were therefore, non-severe. (Tr. 18).

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20). The ALJ then found Plaintiff had the following residual functional capacity ("RFC"):

> The claimant has the [RFC] to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the claimant can lift and carry 20 pounds occasionally, 10 pounds frequently. The claimant can stand, walk, or sit for about six hours each during a normal eight hour workday with normal breaks. The claimant can push and/or pull up to twenty pounds occasionally, 10 pounds frequently. The claimant may occasionally climb ramps and stairs, balance, stoop,

> kneel, crouch, and crawl. The claimant may occasionally
> climb ladders, ropes, or scaffolds. The claimant needs to
> avoid concentrated exposure to hazards, machinery, and
> heights. The claimant has mild to moderate limitations in the
> ability to get[] along with co-workers, accept[] instructions
> from supervisors, and in dealing with the public.

(Tr. 20). The ALJ based his RFC determination on all symptoms and the extent to which the symptoms could reasonably be accepted as consistent with the objective medical evidence and the other evidence. (Tr. 20). Additionally, the ALJ found Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms not credible to the extent they were inconsistent with the above RFC assessment. (Tr. 21). At step four, the ALJ determined Plaintiff was capable of performing her past relevant work as a waitress because it did not require Plaintiff to perform work-related activities that were precluded by her RFC. (Tr. 23).

## III.  ANALYSIS

### A.  The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v.

Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B.     Issue on Appeal

Plaintiff argues one issue on appeal. Plaintiff argues the ALJ erred in finding Plaintiff's subjective complaints of pain not credible. Specifically, Plaintiff claims the ALJ's reasons for finding her not credible are not supported by substantial evidence. The Commissioner alleges the ALJ properly evaluated the credibility of Plaintiff's subjective complaints of pain.

### Whether the ALJ Erred in Making his Credibility Findings

Plaintiff believes her subjective complaints, if found credible, would support a finding of disability and/or a more restrictive RFC. (Doc. 15, p.18). Plaintiff testified she attempted to work as a waitress on two separate occasions in 2003 following the motor vehicle accident in 2001. (Doc. 15, p.16). However, Plaintiff claimed she was unable to

perform the job because she was unable to lift the trays or engage in fast paced movements. (Tr. 577). Plaintiff complained of swelling in her knees and hands as well as weakness in her hands. With regard to the severity of her fibromyalgia, Plaintiff testified as follows:

> I go through swelling periods. These, these periods when, when I call it's like fibromyalgia, it acts up and nothing, nothing helps. I just lay on the couch crying. You can only lay in one position for only a little bit of time, then you have to move to another position. You can't get comfortable. There, there is no pain medication I believe out there that's going to help with the amount of pain you're under. You just have to try to sleep through it or get through it. That's, that's the only thing you can do.

(Tr. 578).

Plaintiff was taking methadone for the pain, which she testified, "alleviated a lot of the pain." However, Plaintiff explained that some days the medicine was not effective at all. (Tr. 582). Due to the amount of pain she was in, Plaintiff testified she had difficulty taking care of and playing with her autistic child as well as her other two children. (Tr. 583).

Plaintiff testified that engaging in daily household chores such as mopping, sweeping, or vacuuming caused her pain in the days following. Specifically, Plaintiff testified that if she performed any chores, she would "pay for it the next three to four days." (Tr. 584). In order to lessen the pain in the days that followed, Plaintiff testified to spending twenty minutes engaged in a chore with thirty minutes of subsequent rest. (Tr. 584). Plaintiff further testified she could not sleep in her own bed because of her back pain. Instead, she slept on the couch with cushions. (Tr. 596). When shopping, Plaintiff stated she could stand and walk for forty-five minutes to an hour. Once home,

Plaintiff was unable to help unload the car because of the pain. (Tr. 588). In addition, Plaintiff testified it became uncomfortable to sit after five to ten minutes of sitting and that she could only lift eight to ten pounds. (Tr. 589-90).

Pain is a non-exertional impairment. Foote, 67 F.3d at 1559. The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). Once a claimant establishes through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce pain, 20 C.F.R. sections 404.1529 and 416.929 provide that the Commissioner must consider evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms in deciding the issue of disability. Foote, 67 F.3d at 1561. Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

In the instant case, the ALJ properly applied the Eleventh Circuit's pain standard. Although the ALJ did not specifically reference the pain standard as such, he did apply the necessary elements. (Tr. 20). The ALJ acknowledged Plaintiff suffered from impairments, which more than minimally limited her ability to perform basic work activities. (Tr. 18). However, the ALJ found Plaintiff's subjective complaints were accompanied by exaggeration, were unreliable, and therefore, were not credible. (Tr. 23). Specifically, the ALJ determined the following: "[a]fter careful consideration of the evidence . . . the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, claimant's statements . . . are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 21).

When an ALJ decides not to credit a claimant's testimony about her subjective limitations or pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). Additionally, the Code of Federal Regulations sets forth seven factors that an ALJ should consider in addition to the objective medical evidence when assessing the credibility of the claimant's statements: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medications used to alleviate pain or other symptoms; (5) treatment other than medication, received for relief of pain or other symptoms; (6) any

measures, other than treatment, used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Social Security Ruling 96-7p. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.

Plaintiff alleges the ALJ's opinion is not clear and concise. As a result, Plaintiff asserts she is left to guess as to why the ALJ found her to be "not credible." (Doc. 15, p.18). In addition, Plaintiff argues the ALJ assessed Plaintiff's credibility "in a somewhat disjointed fashion." (Doc. 15, p.18). As a result, Plaintiff claims the ALJ gave five unclear and disjointed reasons for finding Plaintiff not credible, none of which were supported by substantial evidence.

The Court agrees with Plaintiff's observation that the ALJ's discussion of her credibility is not particularly clear. Based on its review of the decision, the Court believes the ALJ provided six reasons for finding her testimony not credible. First, the ALJ stated Plaintiff was able to raise her autistic child to school age after she was involved in the motor vehicle accident in 2001. (Tr. 22). The ALJ appears to use this statement to prove Plaintiff's alleged subjective complaints were not as severe as she claimed. However, the ALJ provided no support or evidence explaining why he used this fact in his opinion. As a result, the Court is forced to guess as to why the ALJ thought this fact was pertinent. In addition, the ALJ failed to consider Plaintiff's testimony that contradicted this finding. Plaintiff testified her husband helped raise their autistic daughter. (Tr. 583). Indeed, Plaintiff testified her husband played a large role in

the upbringing of their children. (Tr. 583). For example, the ALJ made no mention of Plaintiff's testimony that her husband lost jobs due to the amount of time he had to dedicate to raising their children. (Tr. 583). Accordingly, the Court finds this reason is not supported by substantial evidence.

In his second reason, the ALJ asserted Plaintiff's presentation at the hearing was accompanied by exaggeration and therefore, not credible. In his opinion, the ALJ described Plaintiff's presentation at the October 2, 2008 hearing as "dramatic" and "accompanied by exaggeration." (Tr. 23). The ALJ claimed her presentation was inconsistent with the medical records as a whole, which reflected negatively on her credibility. However, the ALJ failed to provide specific examples of Plaintiff's actions during the "dramatic" and "exaggerated" presentation. As Plaintiff correctly points out, without examples, the Court is forced to guess as to why the ALJ deemed her presentation "dramatic" and "exaggerated." In addition, the only way for a reviewing court to determine whether the ALJ's reasoning is supported by substantial evidence is through examining the ALJ's articulated explanation of his findings.[1] Once again, the ALJ completely omitted his explanation, making it impossible for a reviewing court to evaluate the validity of his findings.

The third reason the ALJ found Plaintiff not credible was Plaintiff's choice to stay at home with her autistic daughter after her motor vehicle accident, rather than return to work. Again, the ALJ simply made this statement and failed to provide any support for

---

[1] The court noted in Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) that without any explanation of the ALJ's findings "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."

-14-

it. Moreover, the ALJ's conclusion that Plaintiff chose to stay home with her autistic daughter was contradicted by Plaintiff's testimony at the October 2, 2008 hearing. During the hearing, Plaintiff testified she attempted to return to work on two separate occasions after her motor vehicle accident in 2001. Plaintiff testified she discontinued work on both occasions because the pain caused her difficulty performing the job properly. Again, without explanation, the Court must assume the ALJ failed to consider this testimony. As such, the undersigned finds the ALJ's third reason for finding Plaintiff's testimony not credible is also not supported by substantial evidence.

The fourth reason offered by the ALJ was that Plaintiff's examination with Dr. Zelaya revealed no orthopedic problems. However, Plaintiff correctly points out that Dr. Zelaya diagnosed her with fibromyalgia, which is a non-orthopedic impairment that does not show any significant objective manifestations.[2] Plaintiff is claiming disability in large part due to fibromyalgia and pain stemming from this impairment.[3] (Doc 15, p. 20). As Plaintiff correctly noted, she has been diagnosed with and confirmed to have fibromyalgia by several physicians. (Tr. 295, 461, 472). Although the ALJ stated he gave substantial weight to the physicians' examinations, he failed to specifically explain

---

[2] In Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005), the Eleventh Circuit noted that medical research on fibromyalgia often lacks medical or laboratory signs and is generally diagnosed on an individual's described symptoms.

[3] The Commissioner argued Plaintiff failed to establish any actual, specific limitations that existed as a result of her fibromyalgia and that a diagnosis alone would not suffice. (Doc. 16, p. 8). However, the Court disagrees with this argument. Plaintiff testified she discontinued work as a waitress because she was in too much pain. (Tr. 577). Moreover, Plaintiff complained of swelling periods when her fibromyalgia acted up causing her to lay on the couch crying. (Tr. 578).

what weight was given to which examinations. Instead, he only stated "[t]he examinations reveal no orthopedic problems."

The ALJ also noted that Plaintiff was advised by her physician to engage in light aerobic activity to help treat the symptoms of her fibromyalgia. The Court again assumes the ALJ intended this reference to discount Plaintiff's subjective claims. However, it is generally improper for an ALJ to base a credibility assessment on an individual's failure to obtain medical treatment without first asking the individual about it. Social Security Ruling 96-7, which states in pertinent part:

> In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements. . . .
>
> On the other hand, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. **However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner.**

-16-

S.S.R. 96-7p (emphasis added). The ALJ did not question Plaintiff as to why she did not engage in the light aerobic activity as recommended. Consequently, it is unclear as to the ALJ's reasons for offering this fact. At the very least, the ALJ should have asked Plaintiff during the hearing why she had not engaged in light aerobic activity as recommended.

Lastly, the ALJ claimed Plaintiff's pain was effectively managed by methadone. (Tr. 23). However, Plaintiff testified that despite her regular use of methadone, her pain was not "effectively managed." (Tr. 582). There is substantial evidence in the record contradicting the ALJ's finding that methadone or any other medications PlaintiffI took "effectively managed" her pain. The record reveals several instances in which Plaintiff reported progressive and persistent pain while taking methadone and other pain medications. (Tr. 469, 471, 514, 582). For example, in February 2008, Plaintiff reported persistent pain and had difficulty stooping, squatting, and rising from a sitting position to a standing position. (Tr. 471). In addition, Plaintiff testified she had pain all over her body, noting that the pain was mainly in her knees, hands, back, and hips. (Tr. 578). The ALJ failed to provide any supporting evidence for his conclusion that the methadone "effectively managed" Plaintiff's pain. Instead, he merely stated this conclusion without explaining how and why he reached it. Again, this reason is not supported by substantial evidence.

## IV. CONCLUSION

In sum, the Court agrees with Plaintiff that the ALJ erred when finding her subjective complaints of pain not credible. Specifically, the ALJ's reasons for finding

Plaintiff not credible are not supported by substantial evidence as required by law. As a result, this case is being remanded for further evaluation. On remand, the ALJ shall reconsider Plaintiff's testimony regarding her pain and subjective complaints, and explicitly articulate his reasons for accepting or rejecting her testimony. Additionally, the ALJ may conduct any further proceedings he deems appropriate in light of any new findings. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the receipt of a notice of award of benefits from the Social Security Administration. **This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

**ORDERED:**

The Commissioner's decision is **REVERSED** and **REMANDED.**

**DONE AND ORDERED** in Chambers in Jacksonville, Florida, this   10th   day of July, 2012.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record